UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NOBLE ROMAN'S, INC., | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
|    vs. | ) CAUSE NO. 1:14-cv-206-WTL-MJD |
| | ) |
| B&MP, LLC, et al., | ) |
| | ) |
|    Defendants. | ) |

**ENTRY ON MOTION TO TRANSFER**

This cause is before the Court on the motion to transfer venue filed by Defendants B&MP, LLC, and Leslie Perdriau (hereinafter referred to as "Defendants") (Dkt. No. 127). The motion is fully briefed, and the Court, being duly advised, **GRANTS** the motion for the reasons set forth below. The Court also **GRANTS** the Defendants' unopposed Motion for Leave to File Bradley Perdriau's Declaration as a Supplement to Defendants' Motion to Transfer Venue (Dkt. No. 137).

**I. BACKGROUND**

Plaintiff Noble Roman's, Inc., alleges the following facts in its Amended Complaint. These facts are taken as true for purposes of this Entry.

Noble Roman's and Defendant B&MP, LLC, entered into two franchise agreements ("the Agreements") in March 2010 pursuant to which B&MP would operate a Noble Roman's franchise and a Tuscano's franchise in Bloomingdale, Illinois. Defendant Bradley Perdriau signed the agreements on behalf of B&MP.

Pursuant to the Agreements, B&MP "was licensed and authorized to sell Noble Roman's and Tuscano's branded food products using Noble Roman's licensed intellectual property assets,

subject to the obligations in the Agreement." Am. Compl. at ¶ 18. The term of the Agreements was ten years.

B&MP opened its Noble Roman's and Tuscano's location ("the Location") in September 2010. In April 2012, B&MP was involuntarily dissolved. Since then, Defendants Bradley Perdriau and Leslie Perdriau "have continued to purchase ingredients from Noble Roman's, and have continued to operate the Noble Roman's franchise pursuant to the Agreements." *Id.* at ¶ 23.

The Defendants have violated several terms of the Agreements. Specifically, they have failed to pay some or all of the royalty fees owed under the Agreements totaling "at least $26,348.84"; they have "purposely, intentionally, and knowingly misreported [their] weekly sales to Noble Roman's for the purpose of avoiding payment of Royalty Fees," *id.* at ¶ 35; they have "purchased ingredients from Noble Roman's and used the ingredients to sell non-Noble Roman's fresh baked pizza, breadsticks products, and/or deli sub sandwiches at [their] Noble Roman's Location," *id.* at ¶ 37; and they have violated the non-competition provisions of the Agreements by selling non-Noble Roman's and Tuscano's products within a one-mile radius of the Location. Noble Roman's asserts claims for breach of contract and deception against the Defendants based upon these actions. It also asserts a claim for making "a false or misleading representation of fact which is likely to cause confusion, mistake, or deceive customers as to the origin, sponsorship, or approval of B&MP's goods by Noble Roman's in violation of 15 U.S.C. § 1125(a)(1)(A)" based upon the Defendants' sale of "un-affiliated pizza products and deli-sub sandwiches using Noble Roman's Marks" without Noble Roman's consent.

## II. **DISCUSSION**

The issue of venue was first raised in this case by Defendants B&MP and Leslie Perdriau in their Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, which they

filed on June 12, 2015. Because the defenses of improper venue and personal jurisdiction were waived by those Defendants due to their failure to raise them in their initial motion to dismiss, *see* Federal Rule of Civil Procedure 12(h), that motion was withdrawn by the Defendants in response to an Order to Show Cause issued by the Magistrate Judge assigned to this case. Defendants B&MP and Leslie Perdriau then filed the instant motion to transfer venue. The remaining Defendant, Bradley Perdriau, has since executed a declaration in which he indicates that he has no objection to the case being transferred.

The issue now before the Court, then, is whether this case should be transferred to the United States District Court for the Northern District of Illinois pursuant to either 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a). Because the Court finds transfer appropriate pursuant to the former, it need not consider whether transfer is mandated by the latter.

28 U.S.C. § 1404(a) provides, in relevant part: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[1] The Seventh Circuit has given the following guidance regarding the § 1404(a) analysis:

> Recognizing that what is convenient for one litigant may not be convenient for the other, the Supreme Court has taught that section 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to [a] '. . . case-by-case consideration of convenience and fairness.'" *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988), quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). . . . The statutory language guides the court's evaluation of the particular circumstances of each case and is broad enough to allow the court to take into account all factors relevant to convenience and/or the interests of justice. The statute permits a "flexible and individualized analysis" and affords district courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations. *Stewart*, 487 U.S. at 29.

---

[1] There is no dispute that this case could have been brought in the Northern District of Illinois, which is where the Defendants reside.

*Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977-78 (7th Cir. 2010).

"With respect to the convenience evaluation, courts generally consider the availability of and access to witnesses, and each party's access to and distance from resources in each forum. Other related factors include the location of material events and the relative ease of access to sources of proof." *Id.* at 978 (citations omitted). In this case, "convenience" weighs in favor of the Defendants' choice of forum. Each side prefers its home forum, and while each side would be burdened by litigating in its non-preferred forum, the burden would not be particularly great given the ease of travel between the two forums. Neither side has demonstrated that its burden will substantially outweigh the other's if it does not get its choice of forum. Similarly, the convenience of the witnesses also is a wash, as it appears that each side's witnesses are located in its preferred forum. However, the location of the material events weighs in favor of the Defendants, as the wrongful acts that the Defendants are accused of all took place in the Northern District of Illinois. While the Plaintiff points to the provision in the parties' contracts in which the parties "acknowledge that the execution of this Agreement and acceptance of the terms by the parties occurred in Indianapolis, Indiana," the Plaintiff does not allege that those events *actually* occurred in Indianapolis, and Defendant Bradley Perdriau avers that they took place in Illinois. *See* Decl. of Bradley Perdriau at ¶¶ 3-4 ("B&MP, LLC entered into the alleged Franchise Agreements with Noble Roman's in Illinois" and "All contact I had with Noble Roman's occurred while I was in Illinois."). Assuming that they did occur in Indianapolis, however, the remainder of the material events—including any actions that constituted misuse of the Plaintiff's intellectual property and/or breach of the parties' contracts—took place in Illinois.

The second part of the transfer analysis also weighs in favor of transfer to the Northern District of Illinois.

> The "interest of justice" is a separate element of the transfer analysis that relates to the efficient administration of the court system. For this element, courts look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy. The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result

*Research Automation, Inc.*, 626 F.3d at 978 (citations omitted).

With regard to docket congestion and likely speed to trial in each forum, the Plaintiff asserts, without elaboration, that "the statistics comparing this Court with the Northern District of Illinois are neutral at best." Plaintiff's Response at 5. In fact, the statistics provided by the Defendants comparing the two districts for the twelve-month period ending March 31, 2015, show the following:

|  | Southern District of Indiana | Northern District of Illinois |
| --- | --- | --- |
| Total filings per judgeship | 679 | 570 |
| Civil filings per judgeship | 594 | 526 |
| Weighted filings per judgeship | 677 | 532 |
| Trials per judgeship | 19 | 12 |

Based upon those statistics, this District's docket is significantly more congested than the Northern District of Illinois's docket.[2] Further, this District is in a "judicial emergency," while the Northern District of Illinois is not. http://www.uscourts.gov/judges-judgeships/judicial-vacancies/judicial-emergencies (last viewed October 14, 2015).

---

[2]The most recent statistics, for the period ending June 30, 2015, are similar. *See* http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2015/06/30-1 (last viewed October 14, 2015). The Court will use the statistics provided by the Defendants at Dkt. No. 127-4 for its analysis.

5

The Court suspects that the Plaintiff's assessment that the statistics are "neutral" is based upon two other statistics in the chart provided by the Defendants. First, the time from filing to trial for civil cases (30.3 months here versus 30.7 months there) is effectively neutral. Second, there are 616 pending cases per judgeship in the Northern District of Illinois compared to 569 in this district; perhaps the Plaintiff believes that that statistic neutralizes those cited above. That statistic is misleading, however, as are all of the statistics in the table above, because they are based upon the number of *authorized* district court judgeships, not the number of actual district judges serving in the district. The reality is that there are 22 authorized judgeships in the Northern District of Illinois, all of which are filled, and the district is fortunate to have an additional 12 senior judges who continue to serve. Even assuming that each of the senior judges maintains only a 25% caseload, the effective number of pending cases in that district drops to approximately 542 per judge (13,546 total pending cases divided by 25). In this district, there are five authorized judgeships, one of which has been unfilled for over a year, and two senior judges (one of whom currently maintains a full caseload). The effective number of pending cases per judge in this district therefore also is approximately 542 (2846 total pending cases divided by 5.25). Therefore, when all of the statistics relevant to docket congestion are considered, that factor militates in favor of transfer.

With regard to each court's relative familiarity with the relevant law, the Court finds that factor to be neutral, as the state law applicable to this case is not particularly complex or unique.

Next, the Court finds that "the respective desirability of resolving controversies in each locale" and "the relationship of each community to the controversy" weigh strongly in favor of transfer in this case. In the Illinois Franchise Disclosure Act of 1987, the Illinois legislature

6

expressly recognized the state's strong interest in protecting Illinois residents who become franchisees:

> (1) The General Assembly finds and declares that the sale of franchises is a widespread business activity. Illinois residents have suffered substantial losses where franchisors or their representatives have not provided full and complete information regarding the franchisor-franchisee relationship, the details of the contract between the franchisor and franchisee, the prior business experience of the franchisor and other factors relevant to the franchise offered for sale.
>
> (2) It is the intent of this Act: (a) to provide each prospective franchisee with the information necessary to make an intelligent decision regarding franchises being offered for sale; and (b) to protect the franchisee and the franchisor by providing a better understanding of the business and the legal relationship between the franchisee and the franchisor.

815 Ill. Comp. Stat. Ann. 705/2.  The Act further recognizes the state's interest in having disputes relating to franchise agreements resolved within the state by providing that "[a]ny provision in a franchise agreement that designates jurisdiction or venue in a forum outside of this State is void, provided that a franchise agreement may provide for arbitration in a forum outside of this State."  815 Ill. Comp. Stat. Ann. 705/4.  In addition, with regard to the federal claim in this case, the Northern District of Illinois has a far stronger relationship with this controversy than does the Southern District of Indiana, as the controversy arose because of activities that took place at the Defendants' business in Illinois.  Taking the Plaintiff's allegations as true, any consumer that was confused or likely to be confused by the Defendants' sale of non-conforming food items consumed those items in Illinois, not Indiana.  This District's only real relationship to the controversy in this case is the fact that the Plaintiff is located here.

Finally, the Court considers the Defendants' delay in raising the issue of venue as relevant to the interests of justice factor.  If this Court already had expended substantial resources on this case that the transferee court would have to duplicate to get up to speed on the case, that would weigh against transfer.  That is not the case, however.  Accordingly, the Defendants'

7

delay in asserting the issue of venue in this case is not sufficient reason to deny the motion to transfer.

The Plaintiff, citing *In re National Presto Indus., Inc.*, 347 F.3d 662, 663-64 (7th Cir. 2003), argues that its choice of forum should not be disturbed "unless the balance is strongly in favor of the defendant." In this case, all of the factors either weigh in favor of transfer or are neutral, and Illinois has a much stronger nexus to the relevant events than does Indiana. Accordingly, the Court finds that transfer is appropriate.

### III. CONCLUSION

For the reasons set forth above, the Defendants' motion to transfer (Dkt. No. 127) is **GRANTED**, as is the Motion for Leave to File Bradley Perdriau's Declaration (Dkt. No. 137). **The Clerk is directed to transfer this case to the Northern District of Illinois, Eastern Division.** The Plaintiff's motion for partial summary judgment (Dkt. No. 100) and Defendant Bradley Perdriau's motion to dismiss (Dkt. No. 123) remain pending.

SO ORDERED: 10/22/2015

                                                    Hon. William T. Lawrence, Judge
                                                    United States District Court
                                                    Southern District of Indiana

Copies to all counsel of record via electronic notification